**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

KEVIN R. BAILEY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

AMERICAN COLLECTIONS SYSTEMS, INC., and JONATHAN KLEIN, ATTORNEY AT LAW,

Defendant.

Case No.: 3:18-cv-01039

Honorable Judge David C. Godbey

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION**

## I. Introduction

Plaintiff filed this civil action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Plaintiff filed this case as a putative class action because Defendants Jonathan Klein, Attorney at Law ("Klein") and American Collection Systems, Inc. ("ACS") (collectively "Defendants") sent hundreds of identical form dunning letters to individuals in the United States. As discussed below, the dunning letters uniformly misrepresented that interest and other charges could be added to the debts when this was not accurate – no interest or other charges were accruing. The dunning letters further misrepresented the actual entity that sent the letters. Like many other courts have done in similar FDCPA cases, this Court should certify this case as a class action. *See, e.g., Reyes v. Julia Place Condos. Homeowners Ass'n,* No. 12-2043, 2014 U.S. Dist. LEXIS 175111 (E.D. La. Dec. 18, 2014) (certifying class where debt collector mails similar debt collection letters to proposed class members); *Gammon v. GC Serv. Ltd. Partnership,* 162 F.R.D. 313 (N.D.

Ill. 1995) (certifying class action where proposed class was defined as all person who received the same, single form collection letter); *Avila v. Van Ru Credit Corp.*, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995) (certifying class action where all letters contained the same illegal characteristics); *Carr v. Trans Union Corp.*, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (certifying class action where only one form letter was sent to all proposed class members); *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438 (N.D. Ill 2008) (certifying class who received a standard form letter); *Lewis v. ARS Nat'l Servs., Inc.*, 2:09-cv-1041, 2011 U.S. Dist. LEXIS 100139 (M.D. Ala. Sept. 6, 2011) (certifying class that received the same letter with the same conduct allegedly violating the FDCPA); *see also, Colbert v. Trans Union Corp.*, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995); *Vaughn v. CSC Credit Serv. Inc.*, 1994 U.S. Dist. LEXIS 2172 (N.D. Ill. 1994); *Beasley v. Blatt, Hasenmiller, Liebsker & Friedman*, 152 F.R.D. 142 (N.D. Ill. 1993). Indeed, the plain terms of the FDCPA contemplate class actions. *See* 15 U.S.C. § 1692k(a)(2)(B).

## II. Overview of Facts Alleged in the Complaint

Klein sent Plaintiff an initial form letter (hereafter "Dunning Letter") dated March 14, 2018. (Class Action Compl. ("Compl.") at Exhibit A). This Dunning Letter contains a breakdown of the subject debt, including the "Principal," "Interest," and "All Costs" that are included within the total calculation of the subject debt. (*Id.*). The inclusion of this language suggests that interest and other costs could properly be added to the subject debt. This, however, was a deceptive representation designed to instill an unwarranted sense of urgency in consumers since interest and other costs were not properly chargeable to the subject debt.

Furthermore, although the Dunning Letter is sent from Klein, ACS was the actual entity attempting to collect the debt. The phone number Plaintiff was directed to contact in the event of

questions regarding the Dunning Letter does not belong to ACS, but instead belongs to Klein. (*Id.* at ¶¶ 18-21).

## III. The Claims Raised in the Complaint

Plaintiff filed his class action complaint against Defendants bringing claims under the FDCPA based upon the form letter he received from Defendants that violated the FDCPA. Specifically, Plaintiff claims that Defendants violated 15 U.S.C. §§ 1692e, e(2), e(10), e(14), f, and f(1).

## IV. The Plaintiff Class

Plaintiff seeks to certify the following Plaintiff Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons who received a Dunning Letter or other collection correspondence during the one year preceding the filing of this action through the date of class certification from Klein that contained a portion addressing "interest" and "all costs" in a manner substantially similar as the letter attached to Plaintiff's Complaint as Exhibit A and which represented (866) 391-3505 as the phone number to contact with questions.

## V. The Court Should Certify the Plaintiff Class Under Rule 23

A plaintiff seeking to represent a class first must satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, by showing that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Next, the plaintiff must show that the case can proceed as a class action under subpart (1), (2), or (3) of Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3).

### A. This Case Meets All Four Requirements of Rule 23(a)

**i. The Plaintiff Class Is So Numerous That Joinder of All Members is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that individual joinder of all plaintiffs is impracticable. *Reyes,* 2014 U.S. Dist. LEXIS 175111 at *9-10. There is no "magic number" that must be reached to satisfy numerosity. *Kreger v. Gen. Stee Corp.,* 07-cv-575, 2010 U.S. Dist. LEXIS 86043, *4 (E.D. La. July 19, 2010). Although typically this requires classes consisting of 40 or more individuals, the Fifth Circuit, in assessing whether to certify a class consisting of 33 members, emphasized that "[t]he proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Committee on Performance and Expenditure of the State of Mississippi,* 637 F.2d 1014, 1022 (5th Cir. 1981); *see also, Walker v. Calusa Investments, LLC,* 244 F.R.D. 502, 506 (S.D. Ind. 2007); *Hubler Chevrolet, Inc. v. Gen. Motors Corp.,* 193 F.R.D. 574, 577 (S.D. Ind. 2000).

A plaintiff is not required to specify the exact number or identity of persons in the class. *Walker,* 244 F.R.D. at 506. Relevant factors for determining whether numerosity is satisfied include: geographic dispersion of the proposed class members, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claims. *Zeidman v. J. Ray McDermott & Co, Inc.,* 651 F.2d 1030, 1038 (5th Cir. 1981).

Courts have repeatedly held that alleged FDCPA violations contained in a form letter sent by a large commercial defendant is sufficient to satisfy numerosity. *Quiroz,* 252 F.R.D. at 441 (citing *Chapman v. Worldwide Asset Mgmt., LLC,* No. 04-c-7625, 2005 WL 2171168 (N.D. Ill. Aug. 30, 2005); *Seidat v. Allied Interstate, Inc.,* 03-c-0975, 2003 WL 21468625 (N.D. Ill. June 19, 2003); *Smith v. Short Term Loans, LLC,* No. 99-c-1288, 2011 WL 127303 (N.D. Ill. Feb. 14, 2011).

ACS identifies itself as "a national leader in accounts receivable management" and holds itself out as "an industry leading full service Accounts Receivable Management Company." *See* https://www.acscollections.com/ (last visited July 23, 2018). Given the size of ACS and its status as a leader in the debt collection industry, it stands to reason that the collection letters it sends, including those it sends via Klein, are formulaic in nature[1] and are sent to a sufficient number of consumers such that the numerosity requirement is met.

Furthermore, the factors governing the numerosity requirement weigh in favor of finding this requirement met. Plaintiff seeks to represent a nationwide class, demonstrating the extent to which joinder of claims is impracticable. Further, class members are easily identifiable as Defendants would merely need to determine to whom the Dunning Letters were sent. Additionally, the FDCPA provides for $1,000 statutory penalty. Given this low individual value, absent class certification, individuals would be unlikely to pursue separate actions. Courts have found that an average claim size of roughly $2,000 weighs in favor of finding impracticability of joinder, and have thus determined the numerosity requirement is met. *Reyes*, 2014 U.S. Dist. LEXIS 175111 at *14 (citing *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 131 (D.C. Minn. 1985)).

Accordingly, in light of the above authority and factors, this case easily satisfies the numerosity requirement of Rule 23(a)(1).

**ii. The Plaintiff Class Satisfied Commonality Under Rule 23(a)(2)**

Rule 23(a)(2) requires the presence of questions of law or fact common to all class members. This is met when there is "at least one issue whose resolution will affect all or a

[1] It is clear based on the nature of the letter attached to Plaintiff's Complaint as Exhibit A that it is formulaic, as there are only a few pieces of information that would need to be cut/pasted in order to recreate a similar letter.

significant number of the putative class members." *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir. 1982). "This provision does not require complete identity of legal claims among the class members." *Id.* Instead, all it requires is "either common questions of fact or common questions of law." *Lewis v. Riddle,* 1998 U.S. Dist, LEXIS 20465, *6 (E.D. La. Nov. 18, 1998) (citing *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 675 (D. Kan. 1989)).

In situations involving form collection letters and alleged FDCPA violations contained within those letters, courts have routinely found the commonality element to be satisfied. *Lewis,* 1998 U.S. Dist. LEXIS 20465 at *6-7 ("[t]here is a common legal issue in this case as to whether the form letters sent to each potential class member violated the FDCPA"); *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (commonality usually satisfied when "defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents"); *Quiroz,* 252 F.R.D. at 442 ("[t]he requisite common nucleus of operative fact exists in FDCPA cases when the controversy arises from a standard form debt collection letter") (citing *Wahl v. Midland Credit Mgmt., Inc.,* 243 F.R.D. 291, 297 (N.D. Ill. 2007); *Jackson v. Nat'l Action Fin. Servs., Inc.,* 227 F.R.D. 284, 287 (N.D. Ill. 2005). Thus, the commonality requirement is satisfied where, as here, each Class member received the same form Dunning Letter that violated the FDCPA. *See Walker,* 244 F.R.D. at 506 ("Common nuclei of fact are typically manifest where . . . the defendant [has] engaged in standardized conduct towards members of the proposed class by [presenting] to them allegedly illegal form letters"); *Quiroz,* 252 F.R.D. at 442 ("This case involves a standard form letter, and the Court would have to resolve a question common to all potential class members: whether [the letter[ violates Section 1692e of the FDCPA"); *Lewis,* 2011 WL 3903092, at *2 ("Here, Lewis alleges that [defendant] . . . sent identical collection letters to her and all of the alleged class members. Therefore, whether the

privacy notice contained in the letters violates the FDCPA is a question 'susceptible to class-wide proof' satisfying the commonality requirement").

Therefore, the Court should find that the commonality requirement for class certification purposes is met by Plaintiff and the putative class.

**iii. The Claims of the Class Representative are Typical of the Class's Claims under Rule 23(a)(3)**

Rule 23(a)(3) requires that the claims of the representative plaintiff be typical of those of the class. Commonality and typicality are "closely related" such that the factors that support a finding of commonality also support a finding of typicality. *See Hubler,* 193 F.R.D. at 577. The "focus is on the general similarity of the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Reyes,* 2014 U.S. Dist. LEXIS 175111 at *24 (citing *Baricuatro v. Industrial Personnel and Management Services, Inc.,* 2013 U.S. Dist. LEXIS 163821 (E.D. La. 2013). The typicality requirement is "not demanding." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on Apr. 20, 2010,* 910 F. Supp. 2d 891, 911 (E.D. La. 2012) (aff'd sub nom. *In re Deepwater Horizon,* 730 F.3d 790 (5th Cir. 2014). If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *Id.*

In the instant matter, Plaintiff's claims are typical within the meaning of Rule 23(a)(3) for many of the reasons that the claims of the Class members meet the commonality requirement of Rule 23(a)(2). As described above with respect to commonality, Plaintiff's claims have the very same characteristics as those of the Class and are susceptible to class-wide proof based on Defendants' form Dunning Letter that violated the FDCPA. *See Quiroz,* 252 F.R.D. at 442 ("Defendant engaged in standardized conduct common to all class members in violation of the FDCPA, Plaintiff's claim is based on the same legal theory and arises from the same course of

conduct as the claims of the putative class members. For these reasons, the Court finds that the typicality requirement of Rule 23(a)(3) has been satisfied"); *see also, Lewis,* 2011 WL 3903092 at *3; *Lewis,* 1998 U.S. Dist. LEXIS 20465, at *8-9.

The claims of Plaintiff are not in conflict with those of the other Class members, and the Plaintiff and the members of the Class assert identical legal claims based upon Defendants' standard form Dunning Letter. Accordingly, this action satisfies the "typicality" requirement of Rule 23(a)(3).

**iv. The Plaintiff and Class Counsel Will Fairly and Adequately Protect The Interests of The Class**

The adequacy requirement for Plaintiff found in Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. When evaluating the adequacy of the class representative, the inquiry focuses on conflicts of interest between named parties and the class they seek to represent. *Amchem Prodcuts, Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997). "A class representative must be part of the class and possess the same interest" as the class members. *Id.* In other words, the named plaintiff must not have interests antagonistic to those of the class." *Hubler,* 193 F.R.D. at 168.

Plaintiff satisfies this condition. As set forth above, Plaintiff's claims are typical of the claims of the Class, and there is no likelihood of either collusion or antagonism to this case. The Plaintiff has a genuine interest in, and commitment to, the outcome of the suit that will ensure vigorous advocacy.

In addition to assessing the adequacy of the named plaintiff, Rule 23(a)(4) also inquires into the adequacy of the named plaintiff's attorneys. This adequacy requirement for Class Counsel is now found in Rule 23(g), and requires consideration of the following:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

An analysis into these factors illustrates Plaintiff's counsel's adequacy. Plaintiff's counsel has expended time in identifying and investigating the potential claims. Plaintiff's counsel reviewed the Dunning Letters serving as the basis of the action, saw the legal violations, and determined that a class action mechanism was the most viable and desirable means of adjudicating the claims. Plaintiff's counsel was committed to investigating and identifying these claims, and remains committed to maintain financial responsibility to fund the action.

Plaintiff's counsel similarly has extensive experience in class actions, other complex litigation, as well as with the types of claims asserted in the action. Plaintiff's counsel James Vlahakis, whose application for *pro hac vice* admission is currently pending before the Court, has extensive experience in class action and other consumer related cases.

Mr. Vlahakis is an experienced consumer class action litigator who has defended over a hundred consumer-based claims since 1998 and has litigated several dozens of putative class actions. Prior to joining Sulaiman Law Group, Ltd., Mr. Vlahakis defended putative consumer class actions over a twenty year period. For example, in conjunction with court appointed class counsel, Mr. Vlahakis has obtained Court approval of class action settlements brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227, et al., ("TCPA"). *See, e.g., In Re Capital*

*One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA settlement involving "wrong party" calls); *INSPE Associates v. CSL Biotherapries, Inc*. (N.D. Ill.) ($3.5 million TCPA based junk fax based settlement). Mr. Vlahakis' experience in defending consumer class action cases will allow him to anticipate defense arguments and advance this case as a class action. For example, Mr. Vlahakis defeated a class certification motion in a consumer case – *Jamison v. First Credit Services, Inc.,* 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013). Further, Mr. Vlahakis has also decertified a previously certified consumer class action in *Pesce v. First Credit Services, Inc.,* 2012 U.S. Dist. LEXIS 188745. Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of dozens of numerous FDCPA class actions. *See, e.g., Long v. Fenton & McGarvey Law Firm, P.S.C.,* 15-cv-01924 (S.D. Ind. Feb. 23, 2017) (Dkt. No. , Order Granting Preliminary Approval of Settlement). Most recently, on May 15, 2018, Mr. Vlahakis was appointed to the Steering Committee in the case of *In Re Apple Device Performance Litigation*, 18-md-02827 (N.D. Cal.) where this multi-district litigation proceeding alleges that claims that Apple Inc. purposefully slowed down older model iPhones with nefarious operating software to mask defects and to force consumers to purchase newer model phones. *See* Dkt. No. 99, Order Consolidating Related Actions and Appointing Interim Co-Lead Counsel and Executive and Steering Committees.

In addition to Mr. Vlahakis' experience with class actions and other complex litigation, Plaintiff's Counsel Nathan C. Volheim is an attorney with extensive knowledge and experience in prosecuting FDCPA cases – particularly those arising from form letters sent by debt collectors. Throughout his 8 year career, Mr. Volheim has prosecuted upwards of 500 FDCPA cases in federal

jurisdictions throughout the country. There are few attorneys in the country with as much experience with the FDCPA as Mr. Volheim.

In light of the above, it is clear that Plaintiff's Counsel easily satisfies the adequacy requirement of Rule 23(a)(4), as provided in Rule 23(g).

**B. The Plaintiff Class Satisfies All of the Requirements of Rule 23(b)(3)**

Once the Court has determined that the requirements of Rule 23(a) are met, it may certify a case as a class action under any one of the three standards provided by Rule 23(b). The proposed Class in the instant case may be certified under section (b)(3), which provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**i. Common Questions Predominate**

"The Rule 23(b)(3) predominance inquiry test whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. The requirement of 23(b)(3) that common issues predominate parallels the commonality factor under 23(a)(2). *Id.* at 623-24; *see also* 2 Newberg on Class Actions § 4:25 (4th ed.) ("In light of the common question requirement's rationale, the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit.") Notwithstanding the parallels between the commonality and predominance analysis, the predominance requirement is "more demanding" that the commonality requirement." *Bell Atlantic Corp. v. AT&T Corp.,* 339 F.3d 294, 301 (5th Cir. 2003). Determining whether predominance exists requires "identifying the substantive issues that will control the outcome, assessing which issues

will predominate, and then determining whether the issues are common to the class." *Id.* (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)).

As previously discussed, federal courts routinely certify classes that bring FDCPA claims based on a standard form letter. Courts within this circuit have repeatedly found that cases centered around form collection letters satisfy the predominance requirement of Rule 23(b)(3). *See, e.g., Reyes,* 2014 U.S. Dist. LEXIS 175111 at 30-31 ("Here, the substantive issue that will control the outcome is whether the letters send by [defendant] violated the FDCPA. Though[] the letters are not identical in their entirety, plaintiffs have shown that they all contain identical paragraphs . . . . Thus, the issue of whether the language shared across these letters violates the FDCPA predominates.") Such a finding is a common theme in courts throughout the country. *See, Hazelwood v. Bruck Law Offices SC,* 244 F.R.D. 523, 525 (E.D. Wis. 2007) ("[T]he predominant issue in the case is whether defendant's letter violated the FDCPA . . ."); *Ayzelman v. Statewide Credit Services Corp.,* 238 F.R.D. 358, 364 (E.D.N.Y. 2006) (finding predominance and superiority in debt collectors' use of standardized form letters to collect debts and common practice of mailing letters to class members); *Alexander v. JBC Legal Group, P.C.,* 237 F.R.D. 628, 632 (D. Mont. 2006) (finding predominance and superiority where each proposed plaintiff received a collection form letter from Defendants which allegedly violated the FDCPA).

In this case, the claims of Plaintiff and the Class members are bound together by a very simple factual link: the Plaintiff and the Class received form Dunning Letters that violated the FDCPA given the misrepresentations as to interest and other costs,[2] as well as through the

[2] Defendant may attempt to argue that individual issues predominate over common ones because whether interest and fees are properly chargeable on a debt depend on the nature of the agreement giving rise to the obligation – which would require an individual assessment into whether a debt could properly have interest or other costs added. However, this is an argument which has been soundly rejected by courts within this Circuit. *See, Byes v. Telecheck Recovery Servs., Inc.,* 173 F.R.D. 421, 424 (E.D. La. 1997) ("Whether this fee was legally collectable depends on an individual factual determination of whether the

deceptive obfuscation of the actual entity that sent the Dunning Letters. The predominant common questions of law and fact arising from this shared factual scenario include, but are not limited to, the following: (i) whether Defendants violated the FDCPA by sending Dunning Letters to Class members which contained a representation as to "interest" and "all costs"; (ii) whether Defendants violated the FDCPA by sending Dunning Letters or other collection letters to Class members representing that (866) 391-3505 was the number to contact with questions regarding a respective letter ; (iii) whether ACS is directly liable for its role in the sending of the Dunning Letter or other collections letters; (iv) whether ACS is vicariously liable for Klein's sending of the Dunning Letter or other collection letters; and (v) the type and amount of relief to which the Plaintiff and Class members are entitled.

In short, the proof of the substantive claims asserted in this case will be the same for all Class members, because the common issues central to all Class members' claims concern Defendants' form Dunning Letters. *See Quiroz,* 252 F.R.D. 438.

**ii. A Class Action is a Superior Mechanism to Resolve the Class Members' Claims**

Rule 23(b)(3) requires the Court to determine whether "a class action is superior to other available methods for a fair and efficient adjudication of the controversy." Certainly a class action in this matter is superior to the prospect of thousands of individual actions raising the same claim, each proceeding at its own pace with duplicative motion practice and discovery proceedings. "[B]ecause individual recovery under the FDCPA can be relatively small, and many consumers are unfamiliar with its protections, a class action is the best method for the fair and efficient

collection of the fee was authorized by agreement creating the debt or by law. . . . Individual factual assessments do not prevent the court from finding commonality. One common legal or factual issue is sufficient to satisfy commonality . . . and it need not be important or controlling"). Therefore, the Court should find unpersuasive any argument that individual factual issues predominate over common issues.

adjudication of the issue . . . where the underlying liability issue can be determined relative to the whole class." *Balogun v. Midland Credit Mgmt., Inc.,* No. 1:05-cv-1790, 2007 WL 2934886, *8 (S.D. Ind. Oct. 5, 2007); *see also, Reyes,* 2014 U.S. Dist. LEXIS 175111 at *31 (collecting cases finding superiority requirement met in FDCPA letter cases).

**1. *Additional Rule 23(b)(3) Factors***

Consideration of the four specific factors listed in Rule 23(b)(3) also compels the conclusion that a class action is superior to resolve these claims.

a. *Interest in Individual Control of Litigation*

The first factor is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "Individual damages under the FDCPA are capped at $1,000. 15 U.S.C. § 1692k(2)(A). This is an inadequate incentive for most consumers to spend the time and money required for successful litigation." *Lewis*, 2011 WL 3903092, at *5; *see also Quiroz*, 252 F.R.D. at 444 ("Defendant engaged in standardized conduct by sending form letters to many consumers, and each individual consumer's claim would likely be too small to vindicate through an individual suit. Therefore, a class action is the superior method to resolve these claims."). Therefore, this Court should conclude that individual Class members do not wish to control their cases and would in fact benefit from the efficiencies of a class action.

b. *Extent and Nature of Pending Litigation*

Plaintiff's counsel is not aware of any other pending litigation involving the same claims raised in this case. The prompt certification of a class in this action would eliminate the possibility of inconsistent results through any such other potential litigation.

c. *Desire to Concentrate Action in One Forum*

The concentration of this action in a single forum obviously facilitates the comprehensive resolution of this matter. As set forth above, to deny class certification would require individual plaintiffs to bring separate suits, involving the burdensome duplication of substantial discovery efforts, which in turn would likely involve repeated disputes relating to the Defendants' discovery responses. A single forum would also permit the uniform resolution of dispositive motions. In short, the concentration of this matter in a class action in this forum will prevent duplication of effort, avoid inconsistent results, and allow efficient adjudication of claims in a single court.

d. *Manageability.*

No manageability problems exist in this matter. *See Lewis*, 2011 WL 3903092, at *5. Even in cases where, unlike the present matter, class action certification presents management difficulties, the courts have recognized that the appropriate solution is to certify selected issues for class action treatment instead of simply denying class certification. *See C. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C. 1992); *see also Skalbania v. Simmons,* 443 N.E.2d 352, 358 (Ind. Ct. App. 1982) ("once a court is convinced . . . that the class action device is the practicable method of vindicating these claims, it will not let procedural difficulties stand in its way"). The claims of the Class in this case are easily manageable by the parties and the Court.

## VI. Compliance with N.D. Tex. L.R. 23.2

To the extent not previously covered in this Memorandum, Plaintiff provides the following information in an effort to comply with N.D. Tex. L.R. 23.2.

### A. Type and Estimated Expense of Notice to be Given to Class Members

Notice regarding the instant matter will be achieved through retaining a service to mail letters to putative class members. Because no discovery has taken place, Plaintiff's counsel does not know the size of the putative class. Accordingly, because Plaintiff's counsel does not know

the size of the putative class, counsel cannot estimate the cost of providing class notice. The source of these funds will come from Plaintiff's counsel, to be recouped as costs in the event of settlement or judgment entered in Plaintiff and Class members' favor. *See, e.g., Erica P. John Fund, Inc. v. Halliburton Co.,* 2018 U.S. Dist. LEXIS 69143, *45 (N.D. Tex. Apr. 15, 2018) ("Expenses and administrative costs expended by class counsel are recoverable from a common fund . . . .").

**B. Discovery Necessary for a Class Certification Hearing**

Plaintiff will need certain information gathered through written discovery in preparation for a hearing on class certification, including but not limited to information regarding how many Dunning Letters Defendants sent and to which jurisdictions, net worth financial information of Defendants, Defendants' policies and procedures relative to its purported and actual collection of interest and other charges, possible payments made by putative class members close in time to the receipt of the Dunning Letters, and the absence of existence of applicable insurance policies which may provide coverage for defense costs and indemnity.

After receipt of Defendants' written discovery responses, Plaintiff anticipates conducting a 30(b)(6) deposition of ACS's corporate representative. Plaintiff further anticipates taking the deposition of Klein. As such, Plaintiff anticipates that four (4) months of discovery will be necessary prior to a class certification hearing.

**C. Arrangements for Payment of Plaintiffs' Attorney's Fees**

To the extent Plaintiff has made arrangements for Payment of Attorney's fees in connection with the instant matter in the event of class certification, such arrangements are made consistent with the provisions of 15 U.S.C. § 1692k(a)(3) in that Plaintiff's counsel will be entitled to reasonable attorney's fees as determined by the court in connection with this lawsuit.

## VII. Conclusion

For the reasons set forth above, Plaintiff respectfully requests that the Court certify the following Plaintiff Class in this action:

> All persons who received a Dunning Letter or other collection correspondence during the one year preceding the filing of this action through the date of class certification from Klein that contained a portion addressing "interest" and "all costs" in a manner substantially similar as the letter attached to Plaintiff's Complaint as Exhibit A and which represented (866) 391-3505 as the phone number to contact with questions.

The Plaintiff further asks the Court to appoint him as representative of the Class and to appoint his counsel as Class Counsel for that class.

Dated: July 23, 2018

Respectfully submitted,

*/s/Eric D. Coleman*
Nathan C. Volheim, Esq. #6302103
Taxiarchis Hatzidimitriadis, Esq. #6319225
Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff
SULAIMAN LAW GROUP, LTD.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 581-5858 (phone)
(630) 575-8188 (fax)

**CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for Plaintiff, certifies that on July 23, 2018, he caused a copy of the foregoing, **PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION** to be served electronically via CM/ECF system on:

SPENCER FANE, LLP
Attn: Jacob Sparks
5800 Granit Parkway
Suite 800
Plano, TX 75024
JSparks@SpencerFane.com

Jonathan W. Klein
101 Heather Lane
Powell, OH 43065
jwk@aol.com

Respectfully submitted,

s/Eric D. Coleman
Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff
Admitted in the Northern District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 581-5858 (phone)
(630) 575-8188 (fax)
ecoleman@sulaimanlaw.com